Good morning. May it please the Court, my name is Susan Will. Can I represent the defendant in this matter, the defendant appellant, Kelly Ankeny? I'd like to reserve three minutes of my time. I think Judge Wardlaw hit upon the central issue in this case in a question asked in the last case. How can adding something to a nonviolent offense categorically transform it to a crime of violence? The answer is it cannot. And obviously, in the United States v. Strickland, this Court found that Oregon Robbery 3 statute is not a violent felony because it requires only the application of minimal force, not the violent physical force required under the ACCA. So the issue in this case is whether the additional element contained in Subsection A of Oregon's held as nonviolent to the violent physical force that is required under the ACCA. And we ask the Court to hold that it does not, and to the extent that the Court may find some ambiguity, if the ambiguity exists, the rule of lenity does require that the statute be construed in Mr. Ankeny's favor. So we ask the Court to reverse his ACCA sentence. With respect to the overbreath issue, there are three key features of the categorical approach that I think are important to keep in mind in this case. First, the categorical approach looks solely to the elements of the State crime as they have been construed by State law, not to facts. Second, the outer contours of the conduct criminalized  in applying the categorical approach that the acts relied, that the conviction relied on nothing less than the least of the acts criminalized. And then finally, as this Court stated in Grizel and reaffirmed in Chavez-Solis, where a State statute explicitly defines a crime more broadly than the generic definition, no legal imagination is required to hold the crime as overbroad. The Court does not need to conceive of an actual case applying the statute of conviction in a non-generic manner. So here we agree, first and foremost, that the Robbery II statute overall is divisible. And therefore, that the statutory section that issue is the representation of being armed, which the Oregon legislature chose to make an additional element plus Robbery III, rather than substituting the representation of being armed for the threat or use of force, or requiring that the threat or use of force be carried out by the means of the representation of being armed. And turning to the ACCA's definition of violent force, we require an outward expression or indication of intention to inflict pain, harm, or punishment. We require force that is capable of causing physical pain or injury to another person. We cannot simply consider mere trivial force. It must be substantial and strong, and that all comes from Johnson I. And Oregon law has been very, very clear and very specific on the limited definition of the representation prong of the Oregon Robbery II statute. And specifically, it is an intentional communication that one is armed. It is not a threat, and it certainly is not a threat to inflict violent force. In the most instructive case on this point, I think, is State v. Lee, which is discussed extensively in our briefs. And in Lee, the Court was asked specifically to decide the question, does Oregon Robbery II require proof that the defendant intentionally communicated through his or her words or conduct an intent to cause imminent serious pain or physical injury upon the victim, which, of course, is the definition of the Oregon Menacing Statute. Court in Lee said no, and the Court looked to the outer contours of the offense, and specifically said it does not necessarily follow from a representation that the defendant is armed, that a victim will be afraid, much less that the defendant intended it to be so. And of course, in Parnell, in analyzing the Massachusetts statute at issue, one of the comments that this Court made was that a threat does require an element of fear. And again, Alanis also cited in our opening brief is very, very helpful to the analysis here, because Alanis stated at page 2011, 135, Supreme Court, 2011, the mental state requirement must apply to the fact that the communication contains a threat, and that is simply not present under Oregon law. And I cited in a 28J letter a statute, a sentencing statute, that in fact enables a sentencing judge to deviate from an otherwise mandatory sentence if the judge finds that the victim was not reasonably placed in fear by the defendant's representation. Now, the government's argument rests, I think, exclusively on the Oregon Supreme Court's decision in White. But there are several reasons why White does not control or even provide significant guidance here. And the first and most significant is that the question presented in White was one of whether two convictions under the Oregon Robbery II statute should merge. It did not decide, nor was it presented, with the issue of conjunction that the government argues. And it was not presented with and, therefore, did not decide whether the level of force needed to accomplish robbery in the second degree must be violent physical force or a threat of violent physical force. And in Walton, this Court stated, if a state's highest court has not ruled on the level of force required to support a conviction, we are bound by reasoned intermediate court rulings. And I think that's where, again, we turn to the decision in Lee. I'd like to turn very briefly to the Court to the government's citation of Watson in this case. And I think the Court can dispense with the government's discussion of the intimidation prong in Watson because Watson was interpreting a Federal statute as it has been construed by Federal courts. And so the analysis, very straightforward, and it cannot be transposed onto the analysis of an Oregon statute. Now, finally, in the 28J letter, we cited to a very recent district court opinion in the case of United States v. Tristan, which is an interesting opinion dealing with essentially the fact that under Oregon law, principal and accomplice liabilities conflated, that although the Oregon accomplice liability statute requires specific intent, juries for decades, and in fact at the time that Mr. Ankeny was convicted, were instructed that an accomplice could be held liable for acts that were a natural and probable consequence of the intended crime. And the government's contended that Oregon requires jury unanimity, but I think one of the cases I think even cited by the government, Pipkin, establishes that the jury concurrency or unanimity issue raised did not even essentially get decided until 1989, and we are dealing here with the 1977 conviction. So we have to look at the law as it existed in 1977. I would like to reserve the remainder of my time for rebuttal, but the Court has a question. Thank you. Ginsburg. I have one question. Why shouldn't we follow the Second Circuit's reasoning in United States v. Bordeaux? Are you familiar with it? I am familiar with that case, and I look closely at it. I have a number of responses. First, I found it interesting that the Court in Bordeaux did not consider the question of indivisibility, because I look at that statute and I see an overbroad individual indivisible statute. But second, the statutory language of Bordeaux is distinguishable because the statutory language specifies that the display or threatened use of a weapon be done in the course of the commission of the crime of robbery, thus creating a temporal and factual link. And it also ties that display to the purposes of the robbery statute. And finally, again, they are interpreting State law elsewhere and not Oregon State law, and Oregon State law sees the elements as operating in the disjunctive. Certainly, the representation of being armed is a necessary element of robbery in the second degree, and that, I think, is the significance of the legislature's use of the word and. But the legislature did not say the threat must be accomplished by the threat of being armed or by the representation, nor did the legislature specify the representation is the threat of being armed in robbery too. I'll give you a minute. Okay. Thank you. Good morning. May it please the Court, Tom Edmonds for the United States. The first point that I wish to make is that when the district court found that robbery to Section A was a violent felony under the ACCA and denied the defendant's motion, it followed the prescription for analyzing a predicate crime down the line. First, it looked at the plain language of the statute. And I differ with my opponent in this case that somehow the Oregon statute in this case is vague or confusing. It's quite clear there's a core robbery offense in Robbery 3, and in order to commit to Section A, which is the representation of being armed. Those two are married. They're conjoined. And the district court found that on the basis of the plain language of the statute, which says that both those elements have to be committed in the course of the theft that's taking place. There's no temporal disconnect. And the notion that somehow that representation can happen on a Tuesday when the robbery in the third degree has happened on a Monday is just silly. That doesn't happen with that statute, and a plain reading of that statute allows for that conclusion. Secondarily, the district court took a very careful examination of Oregon state law. And state versus white is an authoritative opinion of the Supreme Court in Oregon that followed Lee and looked at all of the robbery offenses in Oregon, gave a historical context to how they were passed by the legislature, and what they mean in terms of analyzing them as they elevate from Robbery 3 to Robbery 2 to Robbery 1. And in no less than seven places in that opinion, the Court conjoined the threat that's found in the representation of being armed with the core robbery offense. At page 254, it says, threat of violence from a purported weapon, in describing that elevating condition. Counsel just a few minutes ago said to you that the representation element in Robbery 2 doesn't involve a threat, and she even said that it doesn't involve a threat of violence. And yet the Oregon Supreme Court said exactly that, not just once, but over seven times in the course of its discussion about the robbery offenses. It even went so deep as to look at the commentary that had carried with the passage of robbery in the second degree and the other robbery statutes, and talked about how Section 1A is intended to cover the type of robbery in which the actor is, in fact, unarmed, but conveys to the victim the impression that he has a weapon. While such a threat may not create any greater risk to the person or the victim, it does heighten the terror in the victim's offense, but it ties it in with the intent that's required for robbery, which is the intent to overcome resistance from the taking, or to compel delivery of whatever is being taken. I could go forward with all the examples that White talks about, but as I say, there are at least seven sections of pages 254 to 258 of that opinion that combine those two elements and treat them as one. And they are indeed a single crime when one represents that one is armed in the course of a taking and a robbery. Now, Parnell is actually quite helpful, as is Lee quite helpful, because Parnell — and counsel has limited Parnell's discussion about this, and I think it's important to look at the totality of what Parnell says. But Parnell says that Oregon law requires — or Parnell says that the law requires a threat of outward expression or indication of intention to inflict pain, harm, or punishment. It then talks about what that means. It typifies or qualifies it as an implied threat to use violent force. And in fact, it says if every robbery involved an implied threat of violent force, every victim would be placed in fear. So I submit that in no place has Oregon law placed some requirement that fear be proven or that fear even be a part of the analysis. The subjective or objective view of the victim is irrelevant to Oregon law when it comes to robbery in the second degree. And so I submit that on the basis of the fact that you have the requirement for immediate force being threatened in the course of the taking and the elevating condition of representing that you're armed with a deadly or dangerous weapon, no dispute has been taken with the nature of the particular type of weapon and what that means. But it clearly is an implied threat of violent force to the standard of what is required under Johnson, which would be pain or injury. And I submit that Parnell's expression of what is involved in a threat is mirrored in the Lee case, which says exactly the same thing, that what is required is an outward expression of a threat. So you have Parnell in this circuit, you have Lee from the Oregon Court of Appeals mirroring each other, and then you have Bordeaux's helpful analysis, because this Court has never ventured into this particular type of analysis with what this threatened robbery offense actually means for the force clause threat prong, but Bordeaux did. And the Connecticut robbery statute that Bordeaux was looking at was very similar to Oregon's, where you have a core robbery offense and an elevating condition. And I have to submit before going on with Bordeaux that that type of structure of robbery offenses is not unusual. Our own Federal bank robbery statute has a core robbery offense in Section A of the bank robbery statute, and in Section D has an elevating condition of being armed. And no one has ever questioned that the armed when both of them are committed. And I submit that there is no divorce between the core robbery offense in Oregon and its elevating condition in Robbery II, Section A. So if one looks at Bordeaux, it's helpful because it analyzes both the force clause issue and the intent issue. And Oregon's statute is even stronger on the issue of intent. Connecticut's statute simply said that it had to be done purposefully. Well, that's pretty easy to conclude is a matter of intent. The Oregon statute expressly requires intent. And the intentional threat has to be made with the elevating condition in order to sustain a conviction for Robbery II, Section A. And I submit that this is a very strong presentation of the totality of these cases concluding that the district court in this case got it exactly right when it analyzed both the plain language of the statute, but also the surrounding Oregon case law that it was required to do. I'd like to respond to the Tristan argument that was brought up a minute ago. This argument was presented for the very first time to this Court a few days ago in a 28J letter. I submit that it is a forfeited argument that should not be considered by this Court. The Valdivia case that it stems from was decided before the defendant filed his reply brief in this case, and there was opportunity for them to address this with the district court previously. It did not. And to wait until just a few days ago to raise this very new issue, which has nothing to do with Johnson and involves very complicated issues of divisibility of the aid and abet statute, I mean, talk about making one's head hurt, this particular issue is particularly thorny. And for this Court to be asked to address this within days and with no briefing, I submit is procedurally incorrect and should not stand. And we ask that the Court reject that argument. There are other procedures available to the defendant should he want to address that particular argument to the district court in some sort of renewed motion under 2255. Of course, that may not be a sure thing, but nevertheless, he could try to make that motion. But I submit that that particular argument does not really fall under Johnson necessarily or the violent force requirements that brought us here in the first place. Just to add, I wanted to bring to the Court's attention one more point on the aspect of the elevating condition being conjoined with the core robbery offense. Counsel in one of her 28-J letters this week cited to State v. Johnson, 152 Pacific 3rd, 962. And at page 964 of that opinion, in discussing the elements of robbery in the second degree, it said that in order to prove that crime, the State had to establish and it talked about the first two elements, the core robbery offense and the intentional robbery offense. The third component of this, it says very clearly, defendant represented by words or conduct that he was armed with a deadly weapon to effectuate his intent. That analytically from the court of appeals in Oregon ties in that elevating condition with the core elements of robbery in the third degree that are required. The intentional requirements come from that core offense. It's absolutely impossible in the face of that dictate from Oregon courts for this court to find that somehow those elements are divorced and could be committed somehow apart from each other to where there's a divorce between the threat of violence and the threat of force and the representation. And I submit they are married and they're there together in the course of both analytical statements from the Supreme Court in White but also the court of appeals in Johnson. Thank you. Thank you very much, counsel. We'll go ahead and give two minutes. White is not the authority that the government makes it out to be because White was not presented with the question and White's discussion of the legislative history of the robbery statutes was not engaged in with the intention of parsing out the level of force required to satisfy or that must be proven in the course of the commission of a robbery. Nowhere in White does the word conjunction appear and White doesn't differentiate between threat and risk. And again, what White was presented with was a statutory merger question. In my reply brief, I cited State v. Slatton, which is a case that discusses the purpose and focus of the White court's analysis at length with respect to deciding the statutory merger question. And I'd submit that in discussing the legislative history of a statute, a court necessarily is looking at the heartland of cases. What did the legislature perhaps focus on? But it does not look to the outer contours of the offense, and that's where we turn to State law. State v. Gaines cited in my opening brief, in fact, makes that clear with respect to statutory interpretation. Text and context have primacy. Legislative history is a secondary consideration. So this Court looks to State cases. What about this Johnson case that the government cited at the end of the argument? I mean, I think that that is a dictum, since it certainly has not been followed with respect to any other case. And the question presented in Johnson, the issue on appeal was, do I have a lawful claim of right in attempting to commit a theft? And the Court said, no, you do not. So that dictum does not supersede the holding in Lee, which limits the intent of the representation. And, in fact, looking to the facts of the Johnson case, we have an individual who says, I feel like popping off some caps. That is not a threat against a person. It is not an implied threat against a person. It isn't a representation that one is armed. It could be accompanied by a show of force or a use of force, and it could mean I'm going to start shooting out your TV, your couch. But all that Oregon requires is that the force itself be applied against a person. There is no such requirement with regard to the representation. And we've cited a number of cases in which the second prong, the aided by another person present, is plainly divorced. We cited Oliver, in which, again, the representation and the force are plainly divorced. And it is the government's burden to show here that the outer contours of the State offense necessarily require conjunction and necessarily require proof of intent to force for the crime to qualify under the ACCA. And since the government has not made that showing, we ask the Court to reverse. With respect to the government's argument about forfeiture, may I wrap it up? Breyer, yes. Purely legal issue, timely raised, diligently raised, government responded. And if the government wishes, the government can certainly seek supplemental briefing or the Court can order it, but we don't think it's waived any more than the government's belated citation to Watson is waived. In fact, we cited a decision almost immediately after it was issued. So we ask the Court to reach that issue rather than disregard it on a technical objection. Thank you. Thank you both for your argument. These kinds of cases we could go on for hours and hours and hours. It's kind of like looking at an Escher painting and trying to figure out what exactly how he did it. Maybe it's a little harder than that. This matter is submitted, and we'll move on to the final case today.
judges: Wardlaw, Owens, Lefkow